IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marlene Baldwin, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Michelle D'Andrea, et al.,<br><br>    Defendants. | No. CV-13-08161-PCT-NVW<br><br>**ORDER** |

Before the Court is Plaintiffs' Motion for Attorneys' Fees and Costs (Doc. 27), the Response, the Reply, and Plaintiffs' Final Submission. Plaintiffs seek $58,622.98 in attorneys' fees and expenses. The Motion will be granted in the amount of $35,000.00.

**I.  LEGAL STANDARD**

In any action or proceeding to enforce a provision of 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. Prevailing parties in civil rights litigation "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart,* 461 U.S. 424, 429 (1983) (internal quotations and citation omitted). To qualify as a "prevailing party":

> . . . a civil rights plaintiff must obtain at least some relief on the merits of his claims. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought or comparable relief through a consent decree or settlement . . . . In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal

>relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

*Farrar v. Hobby,* 506 U.S. 103, 111–12 (1992) (citations omitted). The magnitude of the relief does not affect a plaintiff's eligibility for a fee award under § 1988. *Id.* at 114.

After determining the plaintiff is the prevailing party, the court must calculate a reasonable fee award using a two-step process: "First, the court must calculate the 'lodestar figure' by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate." *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir.2000) (citations and footnote omitted). Second, the court must consider whether the lodestar figure should be adjusted pursuant to additional factors that were not considered in the initial calculation. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). The additional factors to consider are:

>(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975); *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 & n. 8 (9th Cir.1996); *see* LRCiv 54.2(c)(3). Factors (1) through (4) and (6) are taken into account in either the reasonable hours component or the reasonable rate component of the lodestar calculation. *Morales,* 96 F.3d at 364 n. 9. Factors (5) and (7) through (12) are considered in determining whether to adjust the presumably reasonable lodestar figure. *Id.*

But it is not enough to recite the rule and announce a figure—the court's calculations must be transparent. *Padgett v. Loventhal*, 706 F.3d 1205, 1208 (9th Cir. 2013). At a minimum, an award of attorney fees must address the number of hours being compensated, the hourly rate applied, and how the relevant lodestar factors

impacted the award. *Id.* at 1208 (citing *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1065 (9th Cir. 2006)). Any deviation from a general rule applying to an award of fees or costs must also be explained. *Padgett*, 706 F.3d at 1209; *see, e.g.*, Fed. R. Civ. P. 54(d) (awarding prevailing parties their costs).

The final lodestar figure is the reasonable attorney fee for actions brought pursuant to § 1988. No contingency enhancement or multiplier may be tacked onto this figure to compensate for the risk of loss incurred by attorneys who file § 1983 actions knowing they will only be compensated for their services if they are able to recover under the statute's fee-shifting provision. *City of Burlington v. Dague*, 505 U.S. 557, 562-567 (1992).

## II. DETERMINATION OF REASONABLE ATTORNEYS' FEES

### A. General Considerations

In this case, it is undisputed that the Plaintiffs are prevailing parties. The Defendants stipulated early on to the entry of judgment declaring the statute in question unconstitutional. The complaint was served on June 26, 2013. Defendants never filed an answer, and the parties stipulated on October 1, 2013, to entry of judgment in favor of Plaintiffs. Briefing on the attorneys' fees motion was completed on March 20, 2014 (Doc. 43), except for additional quantification of fees filed on July 2, 2014. (Doc. 44.)

The Court's only task is to determine the amount of the reasonable award of attorneys' fees. Here that means determining the time and services necessary to bring such an action and fair hourly rates for the providers in question. It also means determining the reasonableness of the total billed services and fees. The Court bases its determinations on careful review of the fee claim, the objections thereto, the substance of the representation, and its familiarity with practices and market values of services in Arizona for hourly rate billing in civil litigation, including substantial public law litigation.

It may be obvious, but in light of the parties' disagreements, it helps to state that the determination of what is the reasonable fee is a question of fact. Ultimately the reasonable fee is a matter of market value. In theory, the market determines what

services are reasonable and what hourly rates are paid those services. It is comprised of various data points which mark what free, willing, and knowledgeable buyers will pay for given services. In theory, the preponderance of the data points will coalesce into fair market value. That fair market value is what the Court seeks to approximate in this and in every fee award.

The market also sets different rates for different lawyers of different skills and efficiency. High rates import high skill and high efficiency. Many lawyers have good skills but lesser efficiency than lawyers who charge higher rates. The market does not pay less efficient lawyers more by paying them the same hourly rate as equally skilled and much more efficient lawyers. The true indicator of the reasonable value—the fair market value—of any lawyer's services measured by time is what that lawyer actually charges and actually collects. Some lawyers have nominal hourly rates that are discounted in fact, making the nominal rate a fiction. Some lawyers collect significantly less than they bill. The effective hourly rate—the actual collections divided by hours worked—is the true measure of the market value of any individual lawyer's services.

The hourly rate loadstar calculation may not be the end of the determination of a reasonable fee. Lawyers charging their own clients must always exercise billing judgment in light of efforts expended and the total fee claimed. The Court must approximate that same judgment. This is especially true in cases where, for reasons of professional pride, interest, or commitment to justice, the lawyer expends more time than could be charged to a willing, able, but cost-conscious client. When the lawyer never intends to charge his own client but hopes for his adversary to pay upon a successful outcome, a significant part of the discipline of market behavior is lost. A court must consider these and other factors.

Similarly, different areas of practice command widely differing fair market rates. The rate or total fee that an excellent lawyer of high efficiency and effectiveness reasonably charges and collects in one practice field is a poor basis from which to determine a rate or a total fee for a lawyer of the same years of practice in a different

field.  Market data for prevailing rates for the type of practice in question are a much better marker.

A difficulty in this and other cases is that the hourly rates are claimed based on what other lawyers effectively charge.  But the best evidence is missing: what each of these lawyers actually charges and collects, not for some of their time but for their time as a whole.  Even more difficult is the claimed hourly rates for lawyers who do not charge and collect fees and thus have no actual market validation of value and rate.   For such claims, the Court is left to weigh the tasks, time, and services rendered, with reduced confidence that they would have been charged to the lawyer's own client.  The Court has read all the time entries on the Motion.

### B. Application to Plaintiffs' Fee Claim

The analysis starts with the fees and values claimed by Plaintiffs and addresses, in turn, each of the Defendants' objections.  Plaintiffs state that they have excluded "time entries that are redundant, excessive or otherwise unnecessary," paralegal assistance, legal research by law students, duplication on drafting the complaint and motion, and some multiple attendance at meetings.  (Doc. 33 at 3.)  Plaintiffs claim $58,622.98 in fees and lawyer's expenses.  (Doc. 44.)

Some of Defendants' objections are amenable to appraisal by validation or reduction of specific time entries.  But other objections go to larger questions of appropriateness of lines of work, division or duplication of labor, or quantities of time as a whole.  Those objections cannot be measured just by individual time entries but turn on judgment and experience, which the Court applies to this Motion.

Most of Defendants' specific categories of objection are for excessive services or rates.  On a general level, they contend that 161.78 hours is excessive for an uncontested case.  Defendants' objections, some general and some specific, are addressed next.

1. Plaintiffs request a rate of $525/hour for the services of lead counsel Daniel Pochoda, which Defendants dispute.  He has a lengthy and distinguished career in government, legal academe, and as Executive Director of the Arizona Civil Liberties Union.  But the Court is not persuaded that the work he did here has the same market

value his services would have if he had a career in commercial litigation. There is a known market value for the kind of services Mr. Pochoda rendered in this case. The Court finds as a matter of fact that the most persuasive measure of a market rate for Mr. Pochoda's work is at the 95th percentile of lawyers in civil rights litigation as measured in the 2013 State Bar of Arizona survey. Attributing an hourly value of $350 to services of Mr. Pochoda might be too high, but it is certainly not too low.

The rates claimed for the other providers will be accepted, subject to reductions for other reasons.

2. The times claimed for drafting the complaint were generally reasonable, though modestly duplicative.

3. Plaintiffs made no pre-suit demand. Instead they prepared a substantial motion for preliminary injunction early on. It was reasonable for Plaintiffs to apprise Defendants of Plaintiffs' analysis and authorities early on, which may well have contributed to Defendants' early acquiescence. The motion for preliminary injunction served that purpose as well. Defendants' objection to $6,000 for preparing that motion will be overruled.

4. Defendants object that Plaintiffs should not have expended substantial fees after the Defendants acquiesced. Usual and reasonable practice is to minimize fees at that point. That objection is generally rejected, except that some of the $8,724 will be reduced as duplication.

5. Some lawyer times are claimed for clerical work, which are part of the overhead of practicing law. Some services might have been appropriately done and itemized by legal assistants, but not at the high hourly rates of lawyers. Mr. Malone and Mr. Jordahl have no clerical staff and contend they should be compensated at lawyer rates for clerical and paralegal work they necessarily performed themselves. That is mistaken. It is reasonable for them to do clerical and paralegal work but not to charge lawyer rates for it. The market value for legal services reflects rates that cover clerical expense. Individual lawyers may not charge rates that account for a clerical staff and

then charge clients legal rates for doing clerical and assistant work themselves. Reductions will be made for that.

6. Defendants object that some time descriptions are block billed, aggregating disparate tasks in one total time. The descriptions and quantifications must be sufficient to determine what was done and that the charge is reasonable. It is not necessary to separately quantify every discrete description of related tasks. Block billing of unrelated tasks does prevent finding them reasonable. There are a few instances of improper block billing, but not enough to warrant a fee reduction on that ground.

7. Perhaps the greatest reduction is needed to account for the involvement of three senior attorneys on the case. Ms. Flood too is a senior lawyer, but her work was limited. Efficient division of labor and assignment of tasks to lower-cost providers is appropriate and required. Claiming substantial fees for three senior attorneys, and some fees for a fourth, reflects an understandable interest of those attorneys in this case. But it well exceeds what is reasonably charged to one's own clients. A private law firm would not have staffed this case with three senior lawyers billing for major work. The senior lawyer duplication is reflected in much identifiable duplication, such as legal research, multiple attendances at meetings, multiple preparation, communications among the multiple lawyers, and other activities. It is reflected also in the aggregate claim. Communications between and among lawyers and legal assistants reasonably working on the case is not just reasonable but necessary. But the duplications here well exceed what is necessary to efficient division of labor. These many duplications cannot be quantified with precision. The Court will quantify that reduction based on its judgment and experience in billing for substantial commercial and public law litigation.

8. The award will be calculated based on Mr. Pochoda's services at $350/hour, which is $18,305.00. Ms. Flood's services will be calculated at the requested amount of $1,680.00. For duplication among senior lawyers and clerical and legal assistant services, Mr. Jordahl's and Mr. Malone's services will be valued at 50% of what was requested. That leaves $11,924.10 for Mr. Jordahl's services and $2,818.75 for Mr.

1  Malone's services.  This reduction may be too little, but it is not too much.  Rounding this
2  to the nearest one thousand dollars, the award is $35,000.00.
3        This analysis arrives at a reasonable fee for the services as a whole.  It could also
4  have been arrived at by reducing time expended by the senior most attorney, Mr.
5  Pochoda, in light of the services by the other attorneys.  The allocation of compensation
6  as between the attorneys is up to them.
7        IT IS THEREFORE ORDERED that Plaintiffs' Motion for Attorneys' Fees and
8  Costs (Doc. 27) is granted in the amount of $35,000.00.
9        IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Plaintiffs
10 and against Defendants in their official capacities in the amount of $35,000.00.
11       Dated this 23rd day of July, 2014.

_____
Neil V. Wake
United States District Judge